KATHLEEN WHITE, Plaintiff v. CROSS SALES & ENGINEERING COMPANY, d/b/a CROSS AUTOMATION and CONTROL CORPORATION OF AMERICA, Defendants

No. COA05-1075

(Filed 6 June 2006)

**Employer and Employee; Wrongful Interference— interference with contract—covenant not to compete and termination by new employer**

Summary judgment for defendant was affirmed in an action for tortious interference with contract where defendant's evidence was that plaintiff worked for defendant before going to work for a competitor (CCA); plaintiff had signed a non-compete agreement with defendant; defendant sought to enforce that agreement and to prevent the loss of trade secrets; a lawsuit was filed; and CCA dismissed plaintiff. Defendant did not demand that plaintiff be fired (only that violations of the agreement cease); defendant threatened to sue but provided CCA with no incentive to fire plaintiff; defendant's intent was only to protect its own interests; and similar cases had resulted in negotiation and settlement rather than termination. Plaintiff provided no evidence to the contrary.

Appeal by plaintiff from judgment entered 14 March 2005 by Judge David S. Cayer in Gaston County Superior Court. Heard in the Court of Appeals 10 April 2006.

*David Q. Burgess, for plaintiff-appellant.*

*Constangy, Brooks & Smith, LLC, by Kenneth P. Carlson, Jr., for defendant-appellee.*

MARTIN, Chief Judge.

Plaintiff appeals from an order granting summary judgment in favor of defendant and dismissing her claim for tortious interference with contract. Plaintiff contends the trial court erred in deciding defendant, Cross Sales & Engineering Company ("Cross"), did not intentionally induce another company, Control Corporation of America ("CCA"), to fire her. Plaintiff also argues defendant acted without justification in inducing her termination. For the reasons which follow, we affirm.

Materials presented to the trial court, as relevant to the dispositive issue on appeal, tend to show that plaintiff began work on 8 September 1997 as a customer service representative for Cross, a company which

markets electronic and automation components for industrial machinery. Shortly after beginning her employment, on 16 September 1997, she signed a covenant not to compete. According to the non-competition agreement, plaintiff could not work as a competitor to Cross for a period of one year, within a radius of 50 miles from the office where she most recently worked. Plaintiff was also prohibited from using or disclosing any of Cross's trade secrets or other confidential information. Cross later changed plaintiff's job title to inside sales representative, and for her last three years with Cross her sales region covered the geographical area of Raleigh-Durham, North Carolina.

Plaintiff resigned her employment with Cross on 3 May 2002, and about a week later had an exit interview. In the interview, plaintiff declined to tell Cross where she subsequently would be working. When Cross specifically asked plaintiff whether she would be working for CCA, plaintiff refused to answer. Cross reminded plaintiff about the non-competition agreement she had signed, and indicated it would enforce the covenant if plaintiff went to work for CCA.

Through other conversations with plaintiff, Cross understood that she had let her future employer know of her non-competition agreement. On 6 May 2002, Cross sent plaintiff a letter reminding her about the agreement:

> Enclosed is a copy of your non-compete agreement. . . . We understand that your new employer is informed of the existence of your non-compete agreement. I recommend that you provide them with a copy, an extra is enclosed for this purpose. We appreciate your willingness to comply with your non-compete and hopefully this will be the only communication necessary regarding this matter.

Plaintiff did not respond to the letter.

On 14 May 2002, plaintiff started work with CCA, an industry competitor to Cross, as a manager of inside salespeople. Cross learned that plaintiff was working at CCA, and called her at work to confirm that fact. The president of Cross sent a letter to the president of CCA on 21 May 2002, copied to plaintiff, indicating Cross believed plaintiff was violating her non-competition agreement:

> · I write to inform you that we have verified that Kathleen White, a former Cross Automation employee, has joined Control Corporation of America in Charlotte. We believe her employment with you is in violation of her non-competition agreement with Cross Automation, a copy of which is attached for your con-

venience. We have been told that CCA's management was informed that she had a non-competition agreement with us and that they were also given a copy of the signed agreement.

I kindly request your assistance in resolving this matter expeditiously. Please respond within 10 days after receipt of this letter.

Neither plaintiff nor CCA responded to the letter.

Having received no response to its previous two letters, Cross's counsel sent a third letter to plaintiff and CCA on 26 June 2002. After describing the content of the non-competition agreement, the letter concluded:

. . . Cross has investigated and has gathered information indicating that, not only has Control Corporation hired Ms. White, but it has placed her in an inside sales position, soliciting the very customers with whom she was associated during her employment with Cross. This was done despite notice to Control Corporation that Ms. White was obligated under her Agreement. In fact, Cross has information that Ms. White solicited at least one such customer without revealing that she had changed employers, thus leading the customer to believe that it was dealing with Cross when it was, in fact, dealing with Control Corporation.

The employment of Ms. White by Control Corporation is a clear violation of the Agreement. Further, Ms. White possesses information which she is prohibited from disclosing both pursuant to her Agreement and pursuant to the North Carolina Trade Secrets Protection Act. Yet, in her current position as a sales representative for Control Corporation, she will be unable to perform her duties without misappropriating this trade secret information. Further, the continuation of wrongful solicitation of Cross' customers and of Ms. White's employment in such a sales position in violation of her agreement, *after* the obligations under the agreement were brought to the attention of Control Corporation, and Control Corporation's efforts to interfere by wrongful means with Cross's contractual relations both with its suppliers and customers, violates North Carolina's Unfair and Deceptive Trade Practices Act.

This letter is a demand that Control Corporation and Ms. White immediately cease any and all activities in violation of their respective contractual statutory and common law duties, and provide to Cross adequate assurances that these activities will not be resumed. It is our hope and expectation that you will understand the serious-

ness of this matter and will respond promptly. This is a matter of urgent and immediate concern to Cross. If we do not receive a satisfactory response by July 8, 2002, we have been authorized to initiate litigation to resolve this matter. In such litigation, we will seek both treble damages and attorney's fees pursuant to North Carolina's Unfair and Deceptive Trade Practices statute, as well as other available remedies, including equitable remedies.

Again, neither CCA nor plaintiff responded.

When Cross had received no response by 8 July 2002, it filed suit the next day, alleging breach of the non-competition agreement and other claims. CCA terminated plaintiff's employment on 14 July 2002, and gave her a one-sentence letter memorializing her termination on 15 July 2002: "Because of the lawsuit and your non-compete agreement with []Cross Automation, we are forced to terminate your employment effective today, July 15, 2002." Cross's suit against CCA and plaintiff is not at issue here.

Plaintiff filed suit against both Cross and CCA on 2 January 2004, with an amended complaint filed 9 February 2004. Plaintiff reached a settlement with CCA and voluntarily dismissed her claims against it.

---

We review a summary judgment order *de novo. Howerton v. Arai Helmut, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004). "[S]ummary judgment will be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 62, 414 S.E.2d 339, 341 (1992) (citing N.C.R. Civ. P. 56(c)). A defendant can attain summary judgment "by proving that an essential element of the opposing party's claim is nonexistent, or by showing . . . the opposing party cannot produce evidence to support an essential element of his claim." *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). A plaintiff cannot rest upon the mere allegations of her pleading. N.C.R. Civ. P. 56(c).

To establish a claim for tortious interference with contract, a plaintiff must show:

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant inten-

tionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Labs., Inc. v. Kuykendall,* 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citing *Childress v. Abeles,* 240 N.C. 667, 674, 84 S.E.2d 176, 181-82 (1954)). For purposes of the summary judgment motion, as well as this appeal, both plaintiff and Cross agree the first, second, and fifth elements were met.

The dispositive issue on this appeal is whether Cross intentionally induced CCA to terminate plaintiff's employment, i.e., whether Cross purposefully caused CCA to fire plaintiff in lieu of addressing Cross's concerns about the covenant not to compete. Plaintiff did not produce evidence, and can achieve no reasonable inference, that Cross intentionally induced her termination.

First, Cross did not demand that plaintiff be fired. Instead, Cross's letters were a "demand that Control Corporation and Ms. White immediately cease any and all activities in violation of their respective contractual statutory and common law duties, and provide to Cross adequate assurances that these activities will not be resumed." Cross's attempt to protect its interests is not equivalent to a demand for the firing of CCA's employees. CCA made the decision to fire plaintiff without ever conferring with Cross about the dispute.

Second, Cross provided no incentive to CCA for firing plaintiff. In other words, Cross did not "dangle a carrot" for CCA as an inducement to fire plaintiff, but rather threatened to use a stick in the form of a lawsuit. Since CCA refused to answer any of Cross's communications about the matter, we cannot import to Cross the responsibility for how CCA responded first to a request for assurances from Cross, and then to a threat of a lawsuit.

Third, and most important, are the motives of Cross in its communications with CCA. As described in the affidavit of Stephen Earley, one of Cross's division presidents, Cross believed it had a valid covenant not to compete which needed enforcement. Its motives included protecting its trade secrets and other confidential information, as well as protecting itself against unfair competition. Cross also was concerned that if plaintiff "joined CCA and we did not take action to ensure our Non-Compete Agreement was enforced, CCA might attempt to recruit other Cross Automation inside sales people." All of these motives show the intent of Cross simply to protect its own interests, and not to cause

harm to plaintiff, when it sent letters to CCA seeking assurances its business interests were being protected.

Furthermore, evidence showed that Cross and CCA had prior dealings on personnel matters very similar to the situation here. At least two employees previously had departed Cross for employment with CCA. One employee, Barry Jordan, had negotiated a modification in his severance agreement changing his non-competition requirements. A second employee, Barron Walker, left Cross and started work with CCA. Cross believed its covenant not to compete was violated, and sent Walker and CCA a letter reminding them of the non-competition agreement. When Cross received no response, Cross's counsel sent another letter indicating legal action might occur. In that instance, CCA acknowledged Cross's letter threatening legal action, and the parties negotiated a settlement. By following the same conduct with plaintiff as it had with Walker, Cross could reasonably have expected a similar result: negotiation and settlement, not the firing of an employee.

All of the foregoing evidence produced by Cross is uncontradicted, and plaintiff provided no contrary evidence to the trial court. Thus, plaintiff relies only on an allegation, with no proof, that Cross intentionally induced her firing. The uncontradicted weight of the evidence, i.e., the lack of demand for firing and lack of inducement provided, the business motives of Cross, and the prior dealings between Cross and CCA, shows Cross did not intentionally induce CCA to fire plaintiff. Accordingly, since plaintiff did not "produce evidence to support an essential element of [her] claim," *Collingwood*, 324 N.C. at 66, 376 S.E.2d at 427, the trial court properly granted summary judgment on this element.

A plaintiff must prove all of the elements of a tort, and because plaintiff here cannot show that Cross intentionally induced CCA to fire her, we need not address the fourth element, justification. We therefore do not consider the issue of whether Cross acted without justification due to plaintiff's contention that the covenant not to compete was invalid for lack of consideration because she signed it more than a week after starting her employment and had not previously known its terms. *See, e.g., Young v. Mastrom, Inc.*, 99 N.C. App. 120, 123, 392 S.E.2d 446, 448 (1990) ("It is immaterial that the written contract is executed after the employee starts to work. However, the terms of a verbal covenant which is later reduced to writing must have been agreed upon at the time of employment in order for the later written covenant to be valid and enforceable.") (citing *Stevenson v. Parsons*, 96 N.C. App. 93, 97, 384 S.E.2d 291, 293 (1989)).

**IN RE M.G.T.-B.**

[177 N.C. App. 771 (2006)]

Since White cannot prove her claim of tortious interference with contract, she is "not allowed an award of punitive damages because [she] must establish [her] cause of action as a prerequisite for a punitive damage award." *Watson v. Dixon*, 352 N.C. 343, 348, 532 S.E.2d 175, 178 (2000) (quoting *Oestreicher v. Am. Nat'l Stores, Inc.*, 290 N.C. 118, 134, 225 S.E.2d 797, 807-08 (1976)).

Affirmed.

Judges HUDSON and BRYANT concur.