STEPHEN N. SELLERS, PLAINTIFF v. THOMAS MORTON, FRANK KINCAID, AND STROUPE MIRROR COMPANY, INC., DEFENDANTS

No. COA07-1069

(Filed 17 June 2008)

**1. Appeal and Error— notice of appeal—date of service**

The trial court did not err by denying defendants' motion to dismiss plaintiff's appeal based on the date of service of notice of appeal. The trial court was free to weigh the credibility of evidence concerning the date of service and find a particular date; presumed findings supported by competent evidence are deemed conclusive on appeal.

**2. Contracts— tortious interference—resale of business— evidence of malice**

The trial court did not err by granting summary judgment for defendants on a claim for tortious interference with contract arising from the sale of plaintiff's business to defendants Morton and Kincaid and its subsequent resale to defendant Stroupe Mirror. Plaintiff contended that malice was present in the circumstances surrounding the Stroupe purchase agreement, but the evidence did not support plaintiff's contentions, and a legitimate business reason was presented for the sale.

**3. Conspiracy— civil—breach of agreements—sufficiency of evidence**

The trial court did not err by granting summary judgment for defendants on a claim for civil conspiracy arising from the sale of plaintiff's business to defendants Morton and Kincaid and its subsequent resale to defendant Stroupe Mirror. The threshold issue was whether plaintiff forecast evidence of an agreement between defendants to cause the first purchaser (SGI) to breach its lease and non-compete agreements with plaintiff, but the evidence shows that the second sale was entered into in an effort to remove a lien and does not support the allegation that defendants intentionally excluded payment to plaintiff.

**4. Unjust Enrichment— sale and resale of business—benefit not conferred on defendants**

The trial court did not err by granting summary judgment for defendants on a claim for unjust enrichment arising from the sale of plaintiff's business to defendants Morton and Kincaid and its subsequent resale to defendant Stroupe Mirror. Plaintiff did not prove that he conferred a benefit on defendants, which is necessary in order to recover on an unjust enrichment claim.

**5. Damages and Remedies— punitive—summary judgment on underlying claim**

The trial court did not err by granting summary judgment for defendants on a claim for punitive damages arising from the sale of plaintiff's business to defendants Morton and Kincaid and its subsequent resale to defendant Stroupe Mirror. Summary judgment was correctly granted on the underlying tortious interference claim:

**6. Discovery— summary judgment before end of discovery period—no discovery sought by opposing party**

The trial court did not err by ruling on motions for summary judgment before the end of a discovery period where there was no evidence that plaintiff (the opposing party) sought discovery prior to the motions for summary judgment, no record of any objections to hearing the motions for summary judgment, and no action by plaintiff to continue the hearing for pretrial discovery.

Appeal by plaintiff and defendants from orders entered 8 June 2007 by Judge John O. Craig, III and 10 August 2007 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 19 February 2008.

SELLERS v. MORTON

[191 N.C. App. 75 (2008)]

*Douglas S. Harris, for plaintiff-appellant.*

*Wyatt, Early, Harris, Wheeler, LLP, by William E. Wheeler, for defendant Stroupe Mirror Company, Inc.*

*Keziah, Gates & Samet, L.L.P., by Andrew S. Lasine, for defendants Thomas Morton and Frank Kincaid.*

CALABRIA, Judge.

Stephen N. Sellers ("plaintiff") appeals the trial court's order granting summary judgment in favor of Stroupe Mirror Company, Inc. ("Stroupe Mirror"), Thomas Morton ("Morton"), and Frank Kincaid ("Kincaid," collectively "defendants"). Defendants appeal the trial court's order denying their motion to dismiss plaintiff's appeal. We affirm.

Plaintiff was the president and sole shareholder of Sellers Glass Industries, Inc. ("Sellers Glass"). Morton and Kincaid were the principal officers, directors and shareholders of SGI Acquisitions, LLC ("SGI"). In January 2001, plaintiff sold substantially all of the assets of Sellers Glass to SGI.

Shortly after the sale of assets, plaintiff and SGI entered into two separate contracts. On 31 January 2001, plaintiff entered into a "Consulting and Non-Competition Agreement" ("non-compete agreement") with SGI where plaintiff agreed to provide consulting services to SGI for a period of 90 days along with a covenant not to compete with SGI for a term of five years. SGI agreed to pay plaintiff $100,000.00 in sixty equal monthly installments as consideration for plaintiff's services and plaintiff's covenant not to compete.

The second contract, a lease agreement with SGI, was signed on 1 February 2001. Plaintiff leased real property to SGI for an initial term of six years ("lease agreement"). The lease agreement provided:

> During the first four years of the initial term, Tenant shall pay to Landlord for the use and occupancy of the Premises the annual rental at the base rate of $75,000.00, payable in monthly installments in the amount of $6,250.00. . . . During the fifth and sixth years of the initial term, Tenant shall pay Landlord . . . monthly installments of $4,375.00.

On 13 August 2001, Morton and Kincaid changed the name of their company from SGI to Glass Solutions, LLC ("Glass Solutions"). Prior to the name change, SGI entered into a loan agreement with

Merrill Lynch Business Financial Services, Inc. ("Merrill Lynch"). The loan agreement granted Merrill Lynch a security interest in all of SGI's assets, including the assets acquired from Sellers Glass. On 8 October 2003, Glass Solutions defaulted on its loan with Merrill Lynch. As a result of its financial situation, Glass Solutions sold all its assets to Stroupe Mirror and on 16 January 2004, Stroupe Mirror assumed liability for some of Glass Solutions' debts according to the terms of an asset purchase agreement ("purchase agreement"). Specifically, Stroupe Mirror agreed to pay $300,000.00 to satisfy Glass Solutions' indebtedness to its group of investors. Stroupe Mirror also entered into employment agreements with Morton and Kincaid with simultaneous consulting contracts.

Although Stroupe Mirror did not assume Glass Solutions' liability for either the lease agreement or the non-compete agreement, plaintiff continued receiving payments from Glass Solutions for the lease agreement and the non-compete agreement until the first week in February 2004. At that time, Glass Solutions completely stopped making payments.

On 6 April 2004, plaintiff received a letter from Glass Solutions' attorney notifying him that Glass Solutions had ceased all operations effective 26 January 2004. The attorney's letter also informed plaintiff that Glass Solutions had no remaining funds for payments on either the lease agreement or the non-compete agreement.

On 5 January 2007, Sellers filed a complaint against defendants alleging tortious interference with contract, civil conspiracy with an illegal purpose, unjust enrichment against Kincaid and Morton, and punitive damages.[1]

On 15 May 2007, Stroupe Mirror filed a Motion for Summary Judgment. On 24 May 2007, Morton and Kincaid also moved for summary judgment. On 8 June 2007 in Guilford County Superior Court, the Honorable John O. Craig, III granted both motions for summary judgment in favor of defendants ("the order").

Plaintiff filed a notice of appeal from the order on 6 July 2007. The Certificate of Service attached to plaintiff's notice of appeal described the date of service as 6 July 2006, however, the envelopes containing plaintiff's notice of appeal were postmarked 10 July 2007.

---

1. Plaintiff also filed a breach of contract complaint against Sellers Acquisition Group ("SAC"), a holding company for SGI, which he later voluntarily dismissed without prejudice.

**SELLERS v. MORTON**

[191 N.C. App. 75 (2008)]

Stroupe Mirror filed and served a motion to dismiss plaintiff's appeal on 12 July 2007, and Morton and Kincaid filed motions to dismiss the appeal on 24 July 2007 ("motions to dismiss the appeal"). On 10 August 2007, the Honorable R. Stuart Albright denied the motions to dismiss the appeal. From this order, defendants appeal.

I. Order Denying Motions to Dismiss Appeal

[1] Defendants argue this Court lacks jurisdiction to hear plaintiff's appeal because plaintiff's notice of appeal was defective. We disagree.

The order granting summary judgment in favor of defendants was entered 8 June 2007. Defendants assert plaintiff's notice of appeal from the summary judgment order was not "served" within the statutorily allotted time of thirty days. The envelopes used to send the notice of appeal to defendants' attorneys were postmarked 10 July 2007. In addition, defendants contend the certificate of service attached to the notice of appeal did not comply with the Rules of Appellate Procedure because the certificate of service indicates the service date was 6 July 2006, but the envelopes serving the notice of appeal were postmarked on 10 July 2007.

The trial court is not required to make findings of fact absent a request by the parties, and if neither party requests findings of fact, there is a presumption that the trial court, upon proper evidence, found facts sufficient to support its ruling. *Data Gen. Corp. v. Cty. of Durham*, 143 N.C. App. 97, 101, 545 S.E.2d 243, 246 (2001). When the trial court sits as a finder of fact, questions concerning the weight and credibility of the evidence are the province of the trial court. *Cartin v. Harrison*, 151 N.C. App. 697, 703, 567 S.E.2d 174, 178 (2002). "Conclusions of law that are correct in light of the findings are also binding on appeal." *State v. Howell*, 343 N.C. 229, 239, 470 S.E.2d 38, 43 (1996).

We conclude the trial court did not err in denying defendants' motion to dismiss plaintiff's appeal. The Rules of Appellate Procedure require the notice of appeal to be filed and served within thirty (30) days after entry of judgment "if a party has been served with a copy of the judgment within the three-day period prescribed by Rule 58 of the Rules of Civil Procedure. . . ." N.C.R. App. P. 3(c)(1) (2007). The summary judgment order was served on 8 June 2007 and the notice of appeal was filed on 6 July 2007. The notice of appeal may be served as provided in Rule 26 of the Rules of Appellate

Procedure. N.C.R. App. P. 3(e) (2007). Rule 26(d) of the appellate rules provides that proof of service can be effectuated by:

> an acknowledgment of service by the person served or proof of service in the form of a statement of the date and manner of service and the names of the persons, certified by the person who made service. Proof of service shall appear on or be affixed to the papers filed.

N.C.R. App. P. 26(d) (2007).

The certificate of service raises a rebuttable presumption of valid service. *Hocke v. Hanyane,* 118 N.C. App. 630, 633, 456 S.E.2d 858, 860 (1995) (quoting *In re Cox,* 36 N.C. App. 582, 586, 244 S.E.2d 733, 736 (1978)). Here, plaintiff's "Certificate of Service," signed and dated by the plaintiff's attorney, was attached to the notice of appeal. Stroupe Mirror contends the certificate of service does not indicate when the notice of appeal was served. We disagree. The certificate of service reads:

> This is to certify that I have served the foregoing Plaintiff's Notice of Appeal on Defendants by forwarding a copy of same by first-class mail, postage prepaid, and addressed to the attorneys for Defendants whose names and addresses appear below.
>
> . . . .
>
> This the 6th day of July 2006. /s/ Douglas S. Harris Attorney for Plaintiff

The trial court did not err in concluding the date indicating the date of service was sufficient to withstand the motion to dismiss because the date, 6 July 2006, was an obvious typographical error. Plaintiff presented evidence in the form of two affidavits indicating plaintiff filed the notice on 6 July 2007 and placed it in the mail on the same day. In addition, the notice of appeal was clocked in at the Guilford County Courthouse at 3:16 p.m. on 6 July 2007. Although defendants argue they rebutted the presumption of valid service by submitting the envelopes post-marked 10 July 2007, the trial court was free to weigh the credibility of the envelopes against plaintiff's affidavits and find the date of service to be 6 July 2007.[2]

---

2. We note that N.C. Rules of Appellate Procedure, Rule 27(b) provides that when a party "has the right to do some act or take some proceedings within a prescribed period after service of a notice or other paper on him and the notice or paper is served upon him by mail, three days shall be added to the prescribed period." The certificate of service attached to the summary judgment order indicates the order was served by

"Where such presumed findings are supported by competent evidence, they are deemed conclusive on appeal, despite the existence of evidence to the contrary." *Data Gen. Corp., supra.* This assignment of error is overruled.

## II. Summary Judgment

**[2]** Plaintiff asserts the trial court erred in granting defendants' summary judgment motions because genuine issues of material fact existed rendering summary judgment improper. We disagree.

The standard of review on appeal for a summary judgment is whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Oliver v. Roberts,* 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980); *Barbour v. Little,* 37 N.C. App. 686, 692, 247 S.E.2d 252, 256 (1978). "The question is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact." *Tuberculosis Assoc. v. Tuberculosis Assoc.,* 15 N.C. App. 492, 494, 190 S.E.2d 264, 265 (1972).

Plaintiff argues because a number of facts are disputed, summary judgment was improper. In order to survive a summary judgment motion, the opposing party must forecast evidence indicating the existence of a triable issue of material fact. *Kidd v. Early,* 289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976). We therefore examine whether plaintiff forecasted evidence of disputed facts which are material to plaintiff's claims. Plaintiff brought claims for tortious interference with contract, civil conspiracy with an illegal purpose, unjust enrichment, and punitive damages based on the interference with contract claims.

## A. Tortious Interference with Contract

To establish a claim for tortious interference with contract, a plaintiff must show:

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

---

hand delivery or deposited in the U.S. Mail. Since we do not know the manner of service for the summary judgment order, we do not rely on this rule; however, if served by mail, service on 10 July 2007 would be proper.

*White v. Cross Sales & Eng'g Co.*, 177 N.C. App. 765, 768-69, 629 S.E.2d 898, 901 (2006). Interference is without justification if a defendant's motive is not "reasonably related to the protection of a legitimate business interest." *Privette v. University of North Carolina*, 96 N.C. App. 124, 134, 385 S.E.2d 185, 190 (1989).

> Whether an actor's conduct is justified depends upon "the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor[,] and the contractual interests of the other party." *Peoples Security Life Ins. Co. v. Hooks*, 322 N.C. at 221, 367 S.E.2d at 650. Generally speaking, interference with contract is justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors. *Id.* at 221-22, 367 S.E.2d at 650.

*Embree Construction Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992). A complainant must show that the defendant acted with malice and for a reason not reasonably related to the protection of a legitimate business interest of the defending party. *Market America, Inc. v. Christman-Orth*, 135 N.C. App. 143, 158, 520 S.E.2d 570, 581 (1999) (quotation omitted).

Plaintiff contends malice was present due to circumstances surrounding the purchase agreement. Specifically, (1) Morton misrepresented to plaintiff whether Glass Solutions' investors received any money under the purchase agreement, (2) Stroupe Mirror entered the purchase agreement as revenge for plaintiff's refusal to sell Glass Solutions to Stroupe Mirror years earlier, (3) plaintiff was the only unsecured creditor who did not receive funds under the purchase agreement, and (4) Morton and Kincaid asked one of plaintiff's affiants to give false testimony.

Plaintiff did not forecast sufficient evidence to support his contention that he was the only creditor that was not paid under the purchase agreement. The purchase of Glass Solutions' assets affected all of Glass Solutions' liabilities, not just the contracts with plaintiff. The purchase agreement provided that "[Glass Solutions] convenants that [Glass Solutions] shall[,] at or prior to Closing[,] satisfy all present liabilities of [Glass Solutions] affecting the Assets and shall timely and fully satisfy all other liabilities of [Glass Solutions] to its creditors." Glass Solutions, Kincaid and Morton also warranted to Stroupe Mirror that the purchase agreement would not affect Glass Solutions' contracts with other creditors, including the lease agreement

SELLERS v. MORTON

[191 N.C. App. 75 (2008)]

and the non-compete agreement. The purchase agreement provides that "[Stroupe Mirror] may, but shall not be obligated, to assume any of [Glass Solutions'] contracts listed on Exhibit 5(d)." Exhibit 5(d) lists eight contracts, two of which are the lease agreement and non-compete agreement with plaintiff. This evidence does not support plaintiff's contention that Stroupe Mirror intentionally induced the purchase of assets in order to interfere with plaintiff's contracts with Glass Solutions, since Stroupe Mirror could disclaim liability for the contracts that were held by other creditors. In addition, even if Morton misrepresented the terms of the purchase agreement to plaintiff and encouraged false testimony, those facts do not support a finding that Stroupe Mirror, Kincaid, and Morton intentionally induced Glass Solutions' failure to perform its agreements with plaintiff. *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 657, 464 S.E.2d 47, 54 (1995). We also conclude that defendants Kincaid and Morton presented a legitimate business reason for selling the assets: to satisfy the lien held by Merrill Lynch.

## B. Civil Conspiracy

[3] "There is no independent cause of action for civil conspiracy." *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002) (citation omitted). "Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from that agreement." *Id.* (citing *Muse v. Morrison*, 234 N.C. 195, 66 S.E.2d 783 (1951)).

A threshold requirement in any cause of action for damages caused by acts committed pursuant to a conspiracy must be the showing that a conspiracy in fact existed. The existence of a conspiracy requires proof of an agreement between two or more persons. Although civil liability for conspiracy may be established by circumstantial evidence, the evidence of the agreement must be sufficient to create more than a suspicion or conjecture in order to justify submission to a jury.

*Dove v. Harvey*, 168 N.C. App. 687, 690-91, 608 S.E.2d 798, 801 (2005) (quoting *Henderson v. LeBauer*, 101 N.C. App. 255, 261, 399 S.E.2d 142, 145 (1991)). In *Henderson*, plaintiff alleged doctors conspired to cover up circumstances surrounding her husband's death. *Id.* This Court affirmed summary judgment for defendants because plaintiff's evidence was insufficient to show defendants agreed to cover up her husband's death. *Id.* Similarly, in *Pleasant Valley Promenade,* 120

N.C. App. at 657, 464 S.E.2d at 54, this Court concluded there was insufficient evidence to support plaintiff's allegations that defendants conspired to close defendant's store for the purpose of breaching plaintiff's contract, where the closing of the store was an operational decision made by the defendant.

Here, plaintiff alleges Stroupe Mirror bribed Kincaid and Morton to enter a purchase agreement to sell Glass Solutions' assets. Plaintiff further alleges the consulting fees paid to Kincaid and Morton did not benefit Glass Solutions, Kincaid and Morton were incompetent in the glass business, Morton misrepresented to plaintiff whether investors were paid, and Glass Solutions was the only creditor not paid under the purchase agreement.

The threshold issue is whether plaintiff forecasted evidence of an agreement between Stroupe Mirror, Kincaid, and Morton that caused Glass Solutions to breach the lease and non-compete agreements with plaintiff. The evidence shows that Kincaid and Morton decided to enter the purchase agreement with Stroupe Mirror in an effort to remove Merrill Lynch's lien on Glass Solutions' assets. The terms of the purchase agreement do not support plaintiff's allegation that defendants intentionally excluded payment to plaintiff. This assignment of error is overruled.

### C.  Unjust Enrichment against Morton and Kincaid

[4]  Plaintiff alleges Morton and Kincaid were unjustly enriched by the employment and consulting contracts which benefitted them and not Glass Solutions. Plaintiff contends funds which would have been used to pay plaintiff were applied to pay Morton and Kincaid under their employment and consulting agreements with Stroupe Mirror.

"In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party." *D.W.H. Painting Co. v. D.W. Ward Constr. Co.*, 174 N.C. App. 327, 334, 620 S.E.2d 887, 893 (2005). Here, plaintiff's unjust enrichment claim is based on employment and consulting contracts "benefitting" Kincaid and Morton, which plaintiff alleges were paid at the expense of Glass Solutions. Plaintiff does not prove that he conferred a benefit on defendants, which is necessary in order to recover on an unjust enrichment claim. *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002) ("In order to recover on a claim of unjust enrichment, a party must prove that it conferred a benefit on another party, that the other party consciously accepted the benefit, and that

the benefit was not conferred gratuitously or by an interference in the affairs of the other party."). This assignment of error is overruled.

### D. Punitive Damages

**[5]** Plaintiff argues Morton and Kincaid acted with malice by entering into the purchase agreement with Stroupe Mirror. Plaintiff alleges Stroupe Mirror previously tried to buy Glass Solutions from plaintiff. Since Stroupe Mirror was unsuccessful, plaintiff alleges Stroupe Mirror had a motive to exclude payment to plaintiff when it purchased the assets of Glass Solutions.

"Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud. (2) Malice. (3) Willful or wanton conduct." N.C. Gen. Stat. § 1D-15(a) (2007). Since we conclude that the trial court did not err in granting summary judgment on plaintiff's claims of tortious interference, plaintiff is not entitled to compensatory damages. Therefore, the trial court did not err in concluding as a matter of law plaintiff was not entitled to punitive damages. *See Di Frega v. Pugliese,* 164 N.C. App. 499, 508, 596 S.E.2d 456, 463 (2004) (concluding punitive damages were not warranted where record was devoid of evidence of a civil conspiracy or unfair and deceptive practices claim).

### III. Discovery

**[6]** Plaintiff contends the trial court erred in ruling on the motions for summary judgment before the end of the discovery period. We disagree.

"[I]t is ordinarily error when a court hears and rules upon a motion for summary judgment while discovery is pending and the party seeking discovery has not been dilatory or lazy in doing so." *Shroyer v. Cty. of Mecklenburg,* 154 N.C. App. 163, 169, 571 S.E.2d 849, 852 (2002) (internal quotations and brackets omitted) (citation omitted). However, where there is no evidence that plaintiff sought discovery prior to the motions for summary judgment, no record of any objections to hearing the motions for summary judgment, and no action on the part of plaintiff to continue the hearing to allow additional time for pre-trial discovery, there is no error in proceeding with the summary judgment hearing. *Id.*

Here, the only discovery requests that are included in the record on appeal are from defendants. Defendants served the discovery

requests in February and May 2007. The summary judgment motion was heard on 5 June 2007. Plaintiff did not include any evidence in the record showing that he was awaiting discovery responses from defendants at the time of the summary judgment hearing. While plaintiff alleges in his appellate brief that he "intended to take James Stroupe's deposition," plaintiff does not allege his failure to depose witnesses prior to the summary judgment hearing was attributable to actions by the court or by defendants. Plaintiff was free to serve discovery requests prior to the June 2007 hearing and was free to object to the summary judgment hearing on that basis. This assignment of error is overruled.

## IV. Conclusion

We affirm the trial court's denial of defendants' motion to dismiss plaintiff's appeal and the trial court's grant of summary judgment in favor of defendants on plaintiff's tortious interference with contract, civil conspiracy, unjust enrichment, and punitive damages claims.

Affirmed.

Judges WYNN and McGEE concur.