DDM&S Holdings, LLC v. Doc Watson Enters., LLC, 2016 NCBC 86.

STATE OF NORTH CAROLINA

CATAWBA COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 3107

DDM&S HOLDINGS, LLC;
NICHOLAS DICRISTO; JOHN
DICRISTO; CHARLES MCEWEN;
and JON SZYMANSKI,

Plaintiffs,

v.

DOC WATSON ENTERPRISES, LLC;
T. STEUART WATSON; and
DONALD PHILLIP SMITH, JR.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER AND OPINION ON PLAINTIFFS'
MOTION TO DISMISS
COUNTERCLAIMS**

1.    **THIS MATTER** is before the Court upon Plaintiffs DDM&S Holdings, LLC, Nicholas DiCristo, John Dicristo, Charles McEwen, and Jon Szymanski's (collectively, "Plaintiffs") Motion to Dismiss Defendants Doc Watson Enterprises, LLC ("DWE") and T. Steuart Watson's (collectively, the "Watson Defendants") Counterclaims (the "Motion") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").    For the reasons discussed below, the Court hereby **DENIES** the Motion.

> *Nexsen Pruet, PLLC, by R. Daniel Boyce, and Marks & Klein, LLP, by Justin M. Klein, for Plaintiffs DDM&S Holdings, LLC, Nicholas DiCristo, John DiCristo, Charles McEwen, and Jon Szymanski.*

> *Quinn, Connor, Weaver, Davies & Rouco LLP, by Richard P. Rouco, and Rouco Law PLLC, by George Rouco, for Defendants Doc Watson Enterprises, LLC and T. Steuart Watson.*

> *Jones Childers McLurkin & Donaldson PLLC, by Mark L. Childers, for Defendant Donald Phillip Smith, Jr.*

Robinson, Judge.

# I. INTRODUCTION

2. This lawsuit was originally filed in 2014 and arises out of Plaintiffs' contention that Plaintiffs were improperly squeezed out of PoliceReports.US ("PRUS") by the Watson Defendants and Defendant Donald Phillip Smith, Jr. in advance of a lucrative sales transaction, which caused Plaintiffs damage.

3. After Plaintiffs filed an Amended Complaint in February 2016, the Watson Defendants filed Counterclaims against Plaintiffs for abuse of process and tortious interference with contract, alleging that Plaintiffs filed their lawsuit in order to induce the purchaser of PRUS to withhold certain escrow funds from the Watson Defendants, and thus to coerce the Watson Defendants into paying Plaintiffs additional compensation for their membership interest in PRUS.

4. Because the Court determines that the Watson Defendants have adequately pleaded claims for abuse of process and tortious interference with contract, the Court concludes that the Motion should be denied.

# II. PROCEDURAL HISTORY

5. Plaintiffs filed their original Complaint in this action on December 23, 2014.

6. The case was designated as a complex business case pursuant to N.C. Gen. Stat. § 7A-45.4 by order of the Chief Justice of the North Carolina Supreme dated January 26, 2015, and was assigned to the Honorable Louis A. Bledsoe, III by order dated the same day. The case was later reassigned to the undersigned by order dated July 5, 2016.

7. After an initial period of substantial discovery, and a mediation impasse, Plaintiffs filed a Motion for Leave to File Amended Complaint on January 25, 2016. The Court (Bledsoe, J.) entered an Order granting that motion, and Plaintiffs filed their Amended Complaint on February 22, 2016.

8. Mr. Smith filed his Answer on April 22, 2016.

9. On May 26, 2016, the Watson Defendants filed their Answer to Amended Complaint and Counterclaims.

10. Plaintiffs filed the Motion on July 15, 2016. Briefing was completed, and the Court held a hearing on the Motion on October 5, 2016.

### III. FACTUAL BACKGROUND

11. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the Watson Defendants' Counterclaims that are relevant to the Court's determination of the Motion. *See, e.g.*, *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).

12. On November 12, 2013, Plaintiffs assigned their membership interest in Police Reports.US to DWE in exchange for a sum of $2,000,000 to be paid in installments, pursuant to an Assignment Agreement (the "Assignment Agreement"). (Watson Defs.' Countercl. ¶ 1.) The Assignment Agreement provides that the parties to that Agreement

> generally release and discharge [each party] from any and all claims, liabilities, expenses, damages, demands, actions and causes of action of any kind, whether known or unknown, liquidated or unliquidated, absolute or contingent, in law or in equity, arising from or relating to

facts occurring during the period from the beginning of time to the end of the Earth, including but not limited to any and all claims against Assignee, Company, Derochers, Huneycutt and Watson or any of them arising out of or relating to the Assignor's Units and Membership Interest in the Company or the operation of the Company at any time.

(Watson Defs.' Countercl. ¶ 3.)

13. The Assignment Agreement also contained a "conditional tail payment" provision, which provided that, in the event PRUS was sold to a third party at or above a minimum trigger price, Plaintiffs would receive a conditional tail payment that was to be calculated as a percentage of the actual total sales price. (Watson Defs.' Countercl. ¶ 4.)

14. On August 4, 2014, the Watson Defendants executed a purchase agreement with LexisNexis Claims Solutions, Inc. ("LexisNexis") (the "LexisNexis Agreement"), pursuant to which LexisNexis acquired PRUS. From the proceeds of that transaction, Plaintiffs received (1) a payoff of all outstanding amounts owed under the Assignment Agreement, and (2) the conditional tail payment. (Watson Defs.' Countercl. ¶ 5.)

15. Plaintiffs received a copy of the LexisNexis Agreement, and were aware that it contained an indemnification escrow, which held back approximately $2,000,000 (the "Escrow Funds"). (Watson Defs.' Countercl. ¶¶ 6–7.)

16. Shortly after filing this lawsuit, Plaintiffs notified a LexisNexis affiliate that Plaintiffs had filed a lawsuit related to the sale of Plaintiffs' membership interest to the Watson Defendants, and requested that LexisNexis preserve relevant documents. (Watson Defs.' Countercl. ¶ 8.) Additionally, by naming Mr. Smith as a

defendant, Plaintiffs caused Mr. Smith to file a notice of claim against the indemnification escrow. (Watson Defs.' Countercl. ¶ 9.)

17. The Watson Defendants allege that the notice from Mr. Smith, and the preservation letter sent to LexisNexis, caused LexisNexis to notify the escrow agent to withhold any distribution of the Escrow Funds. (Watson Defs.' Countercl. ¶ 10.) The Watson Defendants have not received distributions of any of the Escrow Funds. (Watson Defs.' Countercl. ¶ 10.)

18. The Watson Defendants further allege that Plaintiffs either knew or wantonly and recklessly disregarded the fact that filing suit regarding the sale of their membership interest to the Watson Defendants would induce LexisNexis to place a hold on distribution of the Escrow Funds. Thus, the Watson Defendants allege, Plaintiffs filed this lawsuit in an effort to prevent distributions of the Escrow Funds, and thereby gain leverage to extract additional money from the Watson Defendants. (Watson Defs.' Countercl. ¶ 11.)

## IV. LEGAL STANDARD

19. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations of the Watson Defendants' Counterclaims in the light most favorable to the Watson Defendants. The Court's inquiry is "whether, as a matter of law, the allegations of the [counterclaims], treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes

the Counterclaims liberally and accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

20. Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the [counterclaim] on its face reveals that no law supports [defendant's] claim; (2) when the [counterclaim] reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the [counterclaim] necessarily defeats the [defendant's] claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a [counterclaim] should not be dismissed for insufficiency unless it appears to a certainty that [defendant] is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

21. The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005). The Court can also ignore a party's legal conclusions set forth in its pleading. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

## V. ANALYSIS

22. The Watson Defendants assert two counterclaims against Plaintiffs: (1) abuse of process, and (2) intentional interference with contract.

A.    Abuse of Process

23.    "[A]buse of process is the misuse of legal process for an ulterior purpose." *Chidnese v. Chidnese*, 210 N.C. App. 299, 310, 708 S.E.2d 725, 734 (2011) (quoting *Fowle v. Fowle*, 263 N.C. 724, 728, 140 S.E.2d 398, 401 (1965)).  An abuse of process claim "requires both an ulterior motive and an act in the use of the legal process not proper in the regular prosecution of the proceeding." *Stanback v. Stanback*, 297 N.C. 181, 201, 254 S.E.2d 611, 624 (1979) (quoting R. Byrd, *Malicious Prosecution in North Carolina*, 47 N.C.L. Rev. 285, 288 (1969)).

> The ulterior motive requirement is satisfied when the plaintiff [or counterclaim plaintiff] alleges that the prior action was initiated by defendant [or counterclaim defendant] or used by him to achieve a collateral purpose not within the normal scope of the process used.  The act requirement is satisfied when the plaintiff alleges that once the prior proceeding was initiated, the defendant committed some willful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter.

*Id.*  Ultimately,

> [t]he test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do.

*Mfrs. & Jobbers Fin. Corp. v. Lane*, 221 N.C. 189, 196, 19 S.E.2d 849, 853 (1942).

24.    As to the ulterior motive requirement, the Watson Defendants allege that Plaintiffs "filed suit for the ulterior purpose of preventing distributions from the indemnification escrow to [the Watson Defendants]." (Watson Defs.' Countercl. ¶ 16.) The Court concludes, and Plaintiffs do not dispute, that this is a sufficient allegation that the Plaintiffs initiated their action for the collateral purpose of preventing the

distributions of the Escrow Funds to the Watson Defendants, and that this purpose was not within the normal scope of the process used.

25. As to the act requirement, the Watson Defendants allege that "[a]fter filing of suit, [Plaintiffs] notified LexisNexis of their lawsuit [by sending the preservation letter] knowing it would result in the non-distribution of funds from the indemnification escrow. [Plaintiffs] took such action in order to coerce or oppress the [Watson Defendants] into paying additional compensation for [Plaintiffs'] membership interest." (Watson Defs.' Countercl. ¶ 16.)

26. The Court concludes that these allegations, taken as true, sufficiently state a claim for abuse of process to survive a motion to dismiss under Rule 12(b)(6). The Watson Defendants have alleged that an act done after the proceeding was initiated— the sending of the preservation letter—was done to gain an advantage over Plaintiffs with respect to a collateral matter.

27. Plaintiffs argue that a preservation of evidence letter can never serve as the basis for an abuse of process claim. Indeed, all other things equal, there is nothing inherently improper about a plaintiff sending a letter to individuals who may have relevant evidence requesting that they preserve such evidence. It is a routine litigation practice. The fact that is a routine litigation practice, however, does not mean that such an act can never be used to gain an advantage with respect to some collateral matter. North Carolina courts consistently hold that acts otherwise routine and permissible can constitute an improper act sufficient to satisfy the "act" element of an abuse of process claim. *See, e.g., Hewes v. Wolfe*, 74 N.C. App. 610, 614, 330

S.E.2d 16, 19 (1985) (denying Rule 12(b)(6) motion where plaintiff alleged that defendants filed notices of *lis pendens* in order to coerce plaintiffs and to achieve a purpose for which *lis pendens* was never intended).

28.     If, through discovery, the Watson Defendants are able to prove what they allege—that Plaintiffs sent the preservation of evidence letter in order to coerce the Watson Defendants into paying additional compensation for Plaintiffs' membership interest in PRUS—then such proof would be sufficient for an abuse of process claim. Coercing a party into paying additional monies is not a purpose for which a preservation of evidence letter is intended. *See, e.g.*, *Carson v. Moody*, 99 N.C. App. 724, 729, 394 S.E.2d 194, 198 (1990) ("Use of process to obtain a payment of a civil claim meets the second prong of the test."). That Plaintiffs contend that this was not their purpose for sending the letter is irrelevant to the determination of whether the Watson Defendants have sufficiently pleaded their claim to withstand Rule 12(b)(6) dismissal.

29.     Accordingly, the Court concludes that Plaintiffs' Motion with respect to the Watson Defendants' abuse of process counterclaim should be denied.

B.     Tortious Interference with Contract

30.     In order to state a claim for tortious interference with contract, a plaintiff must allege:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 523, 586 S.E.2d 507, 510 (2003). As to the fourth element, "[i]nterference is without justification if a defendant's motive is not reasonably related to the protection of a legitimate business interest." *Sellers v. Morton*, 191 N.C. App. 75, 82, 661 S.E.2d 915, 921 (2008). Thus, here, the Watson Defendants "must show that [Plaintiffs] acted with malice and for a reason not reasonably related to the protection of a legitimate business interest of the [Watson Defendants]." *Id.* "A motion under Rule 12(b)(6) should be granted when the complaint reveals that the interference was justified or privileged." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 220, 367 S.E.2d 647, 650 (1988). "[T]he complaint must admit of no motive for interference other than malice." *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 674, 541 S.E.2d 733, 378 (2001).

31.    In their Motion, Plaintiffs contend that the Watson Defendants' claim fails because Plaintiffs had a legitimate business interest in filing the lawsuit. The Watson Defendants' relevant allegations include the following:

- the Watson Defendants have a valid contract with LexisNexis regarding the purchase of PRUS that entitles the Watson Defendants to payment of the Escrow Funds, (Watson Defs.' Countercl. ¶ 21);

- Plaintiffs received a copy of the LexisNexis purchase agreement, (Watson Defs.' Countercl. ¶ 6), and were aware that the LexisNexis purchase agreement contained an indemnification escrow, (Watson Defs.' Countercl. ¶ 7);

- Plaintiffs filed suit to induce LexisNexis to assert a claim to monies in the indemnification escrow, preventing the release of the Escrow Funds to the Watson Defendants, (Watson Defs.' Countercl. ¶ 23);

- Plaintiffs' lawsuit and its continued maintenance are without justification because they had released all claims against the Watson Defendants, had accepted payments from LexisNexis in satisfaction of debt owed to Plaintiffs arising from the sale of their membership interests, and knew that the Watson Defendants had no arrangements or discussions with LexisNexis prior to the execution of the Assignment Agreement, an allegation which was critical to Plaintiffs' original lawsuit, (Watson Defs.' Countercl. ¶ 24); and

- as a result of Plaintiffs' malicious conduct, the Watson Defendants did not receive the first distribution from the Escrow Funds and have thus been injured, (Watson Defs.' Countercl. ¶ 25).

32. Contrary to Plaintiffs' interpretation, these allegations, taken as true, do not admit of a motive other than malice, or any legitimate business justification. Plaintiffs cite to several North Carolina cases that have held the following are legitimate business purposes:

- a defendant's desire to "increase sales of its products," *Combs & Assocs., Inc. v. Kennedy*, 147 N.C. App. 362, 271, 555 S.E.2d 634, 641 (2001);

- a defendant's desire "to establish a competing business," *id.*;

- a defendant's desire "to satisfy the liens" on its assets, *Sellers*, 191 N.C. App. at 83, 661 S.E.2d 915 at 922; and

- a defendant's desire to pay a "less expensive price" for services, *Area Landscaping*, 160 N.C. App. at 524, 586 S.E.2d 507, 510–11.

None of these legitimate business purposes, however, are at issue here. The Watson Defendants' Counterclaim does not admit, nor do Plaintiffs contend, that, in filing their lawsuit, Plaintiffs had a desire to increase sales, establish a competing business, satisfy liens, or pay a less expensive price.

33. In *Hooks*, plaintiff alleged that defendant offered plaintiff's employees job opportunities which induced them to terminate at-will contracts and induced them to breach non-competition provisions in their employment contracts. Plaintiff also alleged, however, that defendant's new job involved developing new territory for the new employer. The North Carolina Supreme Court concluded that such an allegation admitted a legitimate business purpose. *Hooks*, 322 N.C. 216, 222, 367 S.E.2d 647, 650 (1988) ("We conclude that the hiring and placing of the plaintiff's former employees by the defendant for the purpose of developing the territory assigned to him by a company competing with the plaintiff amounted to justifiable interference.").

34. Here, however, there is no similar allegation. Despite Plaintiffs' contentions (and allegations in their Amended Complaint, which the Court does not consider in its resolution of this Motion) to the contrary, there is no allegation in the Watson Defendants' Counterclaims that Plaintiffs had any business justification for

filing the lawsuit other than the malicious purpose of inducing LexisNexis to prevent the release of the escrow funds to the Watson Defendants.

35.     Discovery may ultimately show that Plaintiffs were justified in interfering with the LexisNexis Agreement; Plaintiffs certainly contend that they were, and Plaintiffs' Amended Complaint in this case alleges that they were.  However, considering only the allegations in the Watson Defendants' Counterclaims, and assuming those allegations to be true, the Watson Defendants have sufficiently stated a claim for tortious interference with contract to survive Plaintiffs' Motion.

36.     Accordingly, the Court concludes that Plaintiffs' Motion with respect to the Watson Defendants' counterclaim for tortious interference should be denied.

## VI.    CONCLUSION

37.     For the foregoing reasons, the Court hereby **DENIES** the Motion.


**SO ORDERED**, this the 10th day of November, 2016.


/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
   for Complex Business Cases