LARRY ALLEN v. WEYERHAEUSER, INC., A/K/A WEYERHAEUSER COMPANY

No. 883SC1202

(Filed 15 August 1989)

**Contracts § 26.1; Master and Servant § 8— safety program of employer—integration with written employment contract—termination for failure to comply with safety program**

The trial court properly directed verdict for defendant in plaintiff's action for wrongful termination of his contract to haul defendant's timber where the parties' written contract did not fully integrate their agreement; though the contract did not mention defendant's "Lights On For Safety" program, plaintiff was informed of and agreed to comply with the safety program before he signed the contract; plaintiff's initial compliance with that program subsequent to signing the agreement was additional evidence that the parties did not intend the writing to be fully integrated; evidence that plaintiff verbally agreed to comply and did comply with defendant's safety program did not contradict the express language of the contract; and plaintiff's evidence established as a matter of law that he anticipatorily breached the contract where plaintiff told his supervisor that he would no longer operate his truck with his headlights turned on and that the supervisor should go ahead and "do him a favor" by firing him.

APPEAL by plaintiff from Judgment of *Judge I. Beverly Lake, Jr.,* entered 28 June 1988 in CRAVEN County Superior Court. Heard in the Court of Appeals 11 May 1989.

*Barker, Dunn & Mills, by James C. Mills, for plaintiff appellant.*

*Ward and Smith, P.A., by John A. J. Ward, for defendant appellee.*

ALLEN v. WEYERHAEUSER, INC.

[95 N.C. App. 205 (1989)]

COZORT, Judge.

Plaintiff was under contract to drive a truck to haul defendant's timber. He claims that defendant wrongfully terminated his contract. The trial court granted defendant a directed verdict at the close of plaintiff's evidence. Plaintiff appeals. We affirm.

Plaintiff hauled timber for defendant pursuant to a contract signed in March 1985. Plaintiff previously had for several years been an employee for defendant as a truck driver. In 1983, he began working for defendant as an independent contractor.

The provision of the contract relevant to this dispute provided:

1. SCOPE OF WORK

    * * * *

    (d) Contractor agrees to comply with all operational safety and conservation rules and regulations promulgated by Weyerhaeuser and in effect at the various loading and delivery places, while upon or about such places. Weyerhaeuser shall inform Contractor of any such rules and regulations and amendments thereto.

Plaintiff's witness, Billy Corey, was defendant's supervisor in charge of contract trucking. Mr. Corey, a long-time friend and former co-worker of plaintiff's, was responsible for informing contractors of defendant's safety regulations and for insuring that the drivers complied with those regulations. Mr. Corey informed plaintiff, before plaintiff signed the contract in March 1985, that he would have to burn his headlights while he was on the road. Defendant required all of its contract truckers to operate trucks with headlights on as part of defendant's "Lights On For Safety" program.

Initially, plaintiff complied with the headlight requirement. There were occasions, however, when Mr. Corey would have to remind plaintiff to turn on his headlights. Plaintiff's noncompliance became more frequent, even though Mr. Corey sat down with him on several occasions and explained that he had to comply with company policy. Finally, in May 1985, plaintiff told Mr. Corey that "he won't [sic] going to run with his lights on; that he was tired of it anyway and if . . . [Corey] would fire him it would do him a favor."

ALLEN v. WEYERHAEUSER, INC.

[95 N.C. App. 205 (1989)]

On 17 May 1985, Mr. Corey sent plaintiff a letter giving him notice that defendant was terminating plaintiff's hauling contract. Mr. Corey wrote that plaintiff had been requested to turn on his headlights on 6 May by the company dispatcher and on 15 May by Mr. Corey, but had refused.

Plaintiff sued claiming that defendant wrongfully terminated his contract. The trial court granted defendant a directed verdict at the close of plaintiff's evidence.

The standard of review for the granting of defendant's directed verdict motion involves the question whether, when viewing the evidence in the light most favorable to plaintiff, no reasonable juror could find for plaintiff. *West v. Slick*, 313 N.C. 33, 40, 326 S.E.2d 601, 606 (1985).

Plaintiff argues that the contract required him to comply only with those safety rules that were in effect "at the various *loading* and *delivery* places." (Emphasis added.) He contends that nothing in the written contract gave defendant the right to force his compliance with the "Lights On For Safety" program when he was on the open road and not at a "loading or delivery place."

The issues are whether the writing fully integrated the parties' agreement, and, if it did not, whether parol evidence was inconsistent with the written contract. The parol evidence rule is defined as follows:

> It appears to be well settled in this jurisdiction that parol testimony of prior or contemporaneous negotiations or conversations inconsistent with a written contract entered into between the parties, or which tends to substitute a new or different contract for the one evidenced by the writing, is incompetent. 2 Stansbury's N.C. Evidence § 253 (Brandis Rev. 1973). This rule applies where the writing totally integrates all the terms of a contract or supersedes all other agreements relating to the transaction. *The rule is otherwise where it is shown that the writing is not a full integration of the terms of the contract. The terms not included in the writing may then be shown by parol. Id.,* § 252.

*Craig v. Kessing*, 297 N.C. 32, 34-35, 253 S.E.2d 264, 265-66 (1979) (emphasis added).

ALLEN v. WEYERHAEUSER, INC.

[95 N.C. App. 205 (1989)]

The contract in question contains no integration or merger clause. Plaintiff offered no evidence that the parties intended the writing to be the full, exclusive expression of their agreement. Mr. Corey's testimony tends to suggest that plaintiff was informed of and agreed to comply with the "Lights On For Safety" program before plaintiff signed the contract. Plaintiff's initial compliance with that program subsequent to signing the agreement is additional evidence that the parties did not intend the writing to be fully integrated, and we find that it was not integrated.

The test to determine whether evidence of the parties' oral agreement is admissible is as follows: " 'If oral evidence does not contradict written it is admissible; otherwise, it is not admissible.' " *Craig v. Calloway*, 68 N.C. App. 143, 147, 314 S.E.2d 823, 826 (1984) (quoting *Mozingo v. Bank*, 31 N.C. App. 157, 162, 229 S.E.2d 57, 61 (1976), *cert. denied*, 291 N.C. 711, 232 S.E.2d 204 (1977).

We find the evidence that plaintiff verbally agreed to comply and did comply with defendant's "Lights On For Safety" program does not contradict the express language of the contract. First, the relevant language does not *strictly* limit plaintiff's compliance with safety regulations to loading and delivery places. "(d) Contractor agrees to comply with all operational safety and conservation rules and regulations promulgated by Weyerhaeuser and in effect at various loading and delivery places, while *upon or about* such places." (Emphasis added.) Second, the contract does not limit the type of regulations with which plaintiff must comply only to those involving loading and delivery. It says plaintiff must comply "with *all* operational safety . . . rules and regulations." (Emphasis added.) Thus, the contract does not reflect an overall restrictive intent regarding plaintiff's safety compliance duty even though loading and delivery areas are specifically pointed out.

Plaintiff's assent to defendant's request, for which there is unequivocal evidence, represents a supplemental or additional promise. We find nothing inconsistent between the written and the oral promises. Here the evidence was that plaintiff knew about the headlight safety program before signing the contract and was reminded numerous times after its execution. Moreover, a strict construction of the language, as plaintiff would have us apply, runs contrary to sound public policy. Efforts to improve highway safety should be encouraged.

CHARLOTTE TRUCK DRIVER TRAINING SCHOOL v. N.C. DMV

[95 N.C. App. 209 (1989)]

Finally, plaintiff's evidence established as a matter of law that he anticipatorily breached the contract.

> When the promisor to an executory agreement for the performance of an act in the future renounces its duty under the agreement and declares its intention not to perform it, the promisee may treat the renunciation as a breach and sue at once for damages. *Pappas v. Crist*, 223 N.C. 265, 25 S.E.2d 850 (1943). In order to maintain a claim for anticipatory breach, the words or conduct evidencing the renunciation or breach must be a "positive, distinct, unequivocal, and absolute refusal to perform the contract" when the time fixed for it in the contract arrives. *Edwards v. Proctor*, 173 N.C. 41, 44, 91 S.E. 584, 585 (1917); 4 Corbin, *Contracts* § 973 (1951).

*Messer v. Laurel Hill Associates*, 93 N.C. App. 439, ---, 378 S.E.2d 220, 223 (1989). Plaintiff told his supervisor, Mr. Corey, that he would no longer operate his truck with his headlights turned on and that Mr. Corey should go ahead and "do him a favor" by firing him. We find that this conduct was unequivocal evidence of anticipatory repudiation.

We find that the trial court's grant of directed verdict should be

Affirmed.

Judges JOHNSON and GREENE concur.