CHARLES CALVIN WALKER, Plaintiff v. BRANCH BANKING AND TRUST COMPANY AND THOMAS K. MANNING, Defendants, AND BRANCH BANKING AND TRUST COMPANY, Third-Party Plaintiff v. MYRON LENOIR MOORE, Executor of the Estate of STEVEN C. WALKER, Third-Party Defendant

No. COA98-894

(Filed 15 June 1999)

**Unfair Trade Practices— attempt to collect under guaranty— summary judgment for defendants**

The trial court did not err by denying summary judgment for plaintiff on his unfair trade practices claim or by granting summary judgment for defendants on plaintiff's other claims where plaintiff's son operated a golf course built by plaintiff, the son's company borrowed from defendant-bank, plaintiff was informed after the death of his son that he was responsible for the debt under a guaranty agreement, and plaintiff denied signing any such agreement. It was not an unfair trade practice for defendants to try to collect from plaintiff the remaining balance on the note in question in the face of plaintiff's denial of liability because the only collection action was a demand letter, which was not publicized, defendant's son had represented that the signature was that of his father and it was not unreasonable for defendants to secure the opinion of their own handwriting

expert, the counterclaim filed by defendants to collect on the note was compulsory, and defendants promptly moved to dismiss the counterclaim after their expert verified the plaintiff had not signed the guaranty agreement. Moreover, plaintiff failed to show how defendants' conduct proximately caused actual injury to plaintiff or his business, and the actions of defendants do not support plaintiff's claims for compensatory, punitive, and treble damages. There was no forecast of evidence of rudeness, oppression, or a reckless and wanton disregard of plaintiff's rights.

Appeal by plaintiff Walker from judgment entered 30 April 1998 by Judge Henry W. Hight, Jr., in Alamance County Superior Court. Heard in the Court of Appeals 10 May 1999.

Charles Calvin Walker (plaintiff) and a local architect developed Shamrock Golf Course in the early 1950s, and did so without the benefit of institutional financing. In the early 1970s, plaintiff purchased the architect's interest and turned over management of the golf course to his son, Steven "Steve" C. Walker. Steve Walker operated the golf course through his wholly owned corporation, Shamrock Golf Course, Inc. (Shamrock). Between 1 August 1994 and 3 October 1994, Branch Banking and Trust Company (BB&T) loaned Shamrock approximately $150,000.00; the loan was evidenced by a promissory note dated 3 October 1994 in the amount of $149,420.00. In order for Shamrock to obtain the loan, BB&T and its Senior Vice President, Thomas K. Manning (collectively "defendants"), required that both Steve Walker and plaintiff sign guaranty agreements. An "unlimited" guaranty agreement dated 1 August 1994, guaranteeing payment of Shamrock's debt, bears what appears to be the signature of Calvin C. Walker. Another guaranty agreement bearing the same date was executed by Steve Walker. Shamrock Golf Course, Inc., made payments on the debt until the death of Steve Walker on 22 November 1996. Two days thereafter, upon defendants' request, plaintiff met with defendant Manning. Manning informed plaintiff that he was responsible pursuant to the guaranty agreement for the remainder of Shamrock's debt. Plaintiff denied that he had ever seen or signed the 1 August 1994 guaranty agreement. On 16 December 1996, plaintiff received a letter from defendants demanding immediate payment of the $118,339.56 balance due on the note, plus accumulated interest of $2,350.91, late fees of $300.00, and attorney's fees if all sums due were not paid within 5 days of the date the demand letter was mailed. Plaintiff retained counsel, and on 27 December 1996 filed a complaint

against defendants alleging that the note was a forgery, and that defendants' efforts to collect the note were an unfair trade practice. Plaintiff also asked for compensatory, treble, and punitive damages, and for injunctive relief, both temporary and permanent. In support of his motion for a temporary restraining order (TRO), plaintiff submitted an affidavit dated 24 December 1996 from James R. Durham, an expert in handwriting analysis. It was Durham's opinion that the signature on the guaranty agreement was a forgery and was not the signature of plaintiff. Plaintiff also requested a preliminary injunction to enjoin BB&T from attempting to collect on the note pending the outcome of trial. On 27 December 1996, the TRO was granted; the motion for preliminary injunction was denied on 16 January 1997 because the court found that plaintiff had an adequate remedy at law.

On 26 February 1997, defendants filed a counterclaim asserting plaintiff's liability pursuant to the guaranty agreement. On 4 April 1997, defendants made a motion to amend their answer by striking their counterclaim against plaintiff, and "pleading additional theories and causes of action in support of its collection on the Promissory Note and Guaranty." On 29 July 1997, the trial court granted defendants' motion to dismiss their counterclaim against plaintiff, and held open for twenty days the defendants' motion to amend their pleadings and add a third-party defendant. On 18 August 1997, BB&T filed a third-party complaint against Myron Lenoir Moore, Executor of the estate of Steve Walker, seeking to collect the balance due on the promissory note in the sum of $123,041.67, together with interest, costs, and attorney fees. Defendants also sought to be indemnified by the third-party defendant to the extent it was found to be liable to plaintiff. On 3 November 1997, the trial court granted defendants' written and oral motions to correct its amended answer, motion and third-party complaint, and to add the Executrix of Steve Walker's Estate as a third-party defendant. On 18 December 1997, BB&T made a motion for an entry of default against third-party defendant, which motion was granted the same day.

Plaintiff filed two motions for partial summary judgment: the first, filed on 11 July 1997, to have the guaranty agreement declared null and void; the second, filed on 16 February 1998, prayed that the trial court determine the conduct of defendants to constitute an unfair trade practice pursuant to N.C. Gen. Stat. § 75-1.1. On 3 March 1998, defendants moved for summary judgment as to all of plaintiff's claims. On 30 April 1998, the court granted plaintiff's motion for par-

**WALKER v. BRANCH BANKING & TR. CO.**

[133 N.C. App. 580 (1999)]

tial summary judgment on the guaranty agreement, declaring it null and void; denied plaintiff's motion for partial summary judgment on his claim that defendants' conduct constituted an unfair trade practice; and granted defendants' motion as to all of plaintiff's claims. From the denial of plaintiff's partial summary judgment motion on his unfair trade practice claim and the granting of defendants' summary judgment motion, plaintiff appeals.

*Latham & Wood, L.L.P., by James F. Latham, for plaintiff appellant.*

*Vernon, Vernon, Wooten, Brown, Andrews & Garrett, P.A., by Mark A. Jones, for defendant and third-party plaintiff appellee.*

HORTON, Judge.

Plaintiff assigned error to the trial court's denial of his motion for partial summary judgment on his claim against defendants for unfair trade practices, and the trial court's grant of summary judgment for defendants on all of plaintiff's claims.

To prevail on a claim based on an alleged unfair trade practice,

a plaintiff must show (1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to plaintiff or his business. A practice is deceptive if it has the capacity or tendency to deceive the average consumer, but proof of actual deception is not required. Whether the practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. The plaintiff need not show fraud, bad faith, deliberate acts of deception or actual deception, but must show that the acts had a tendency or capacity to mislead or created the likelihood of deception.

*Spartan Leasing v. Pollard,* 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991) (citations omitted); *see* N.C. Gen. Stat §§ 75-1.1, 75-16 (1994). "A practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Miller v. Nationwide Mutual Ins. Co.,* 112 N.C. App. 295, 301, 435 S.E.2d 537, 542 (1993), *disc. review denied,* 335 N.C. 770, 442 S.E.2d 519 (1994). Plaintiff contended that defendants' conduct in this case was, as a matter of law, an unfair trade practice and moved for summary judgment.

Summary judgment is the device whereby judgment is rendered if the pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. N.C. R. Civ. P. 56; *see* 10 C. Wright & A. Miller, Federal Practice and Procedure § 2711 (1973). The party moving for summary judgment has the burden of clearly establishing the lack of any triable issue of material fact by the record properly before the court.

*Johnson v. Insurance Co.*, 300 N.C. 247, 252, 266 S.E.2d 610, 615 (1980) (citations omitted).

We conclude that the evidence forecast by plaintiff is insufficient as a matter of law to show that the actions of defendants constituted an unfair trade practice. Plaintiff's primary argument is that it was an unfair trade practice for the Bank to try to collect from plaintiff the remaining balance on the promissory note here in question, in the face of plaintiff's denial of liability and claim that his signature on the guaranty was a forgery. The evidence reveals that for a number of reasons the defendants' actions were not immoral, unethical, unscrupulous, nor offensive to public policy. First, defendants did not institute this action in an effort to collect the substantial amounts due them on the promissory note—plaintiff brought the action. The only collection effort made by defendants was to send a letter demanding payment to plaintiff. Defendants did not publicize their demand letter, nor plaintiff's alleged delinquency; plaintiff made the matter public by filing this action. It was not unreasonable to make a demand for payment of the promissory note against plaintiff, because the guaranty agreement provided, among other things, that "[t]his obligation and liability on the part of the undersigned [guarantor] shall be . . . payable immediately upon demand without recourse first having been had by Bank against the Borrower [Steve Walker] . . . ."

Second, plaintiff's own son represented to defendants that the signature on the guaranty agreement was the signature of his father, the plaintiff. We do not find the desire of defendants to secure the opinion of their own handwriting expert to be unreasonable under these circumstances. Defendants had little opportunity, however, to verify the authenticity of plaintiff's alleged signature as plaintiff filed this action only 11 days after receiving defendants' letter demanding payment of the balance due on the note. Third, although plaintiff suggests it was unfair and oppressive for defendants to file a counter-

claim seeking to collect on the promissory note in his action against them for an unfair trade practice, a counterclaim by defendants was compulsory under the circumstances. "According to Rule 13(a) of the N.C. Rules of Civil Procedure, a counterclaim is compulsory if it 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. . . .' " *House Healers Restorations, Inc. v. Ball*, 112 N.C. App. 783, 785, 437 S.E.2d 383, 385 (1993); *see also*, N.C. Gen. Stat. § 1A-1, Rule 13(a) (1990). Failure to assert a compulsory counterclaim ordinarily bars future action on the claim. *Id.* Here, defendants' claim was based on the execution of the guaranty agreement, a transaction which also served as the basis for plaintiff's claim. If defendants had not filed their claim immediately in response to plaintiff's claim, they would have been barred from bringing it in the future. It was not unreasonable under these circumstances for defendants to file a compulsory counterclaim as a protective measure while they were completing their investigation of the genuineness of plaintiff's signature on the guaranty agreement. Fourth, defendants promptly moved that the trial court allow them to dismiss their counterclaim against plaintiff after defendants' expert verified that plaintiff did not sign the guaranty agreement. Defendants' 4 April 1997 motion to amend their answer by dismissing their counterclaim against plaintiff was filed only 37 days after their counterclaim was filed on 26 February 1997.

Finally, even assuming *arguendo* that defendants engaged in an unfair trade practice, plaintiff has failed to show how defendants' conduct proximately caused actual injury to plaintiff or his business. As part of an unfair trade practice claim, a plaintiff must prove not only that defendants have violated N.C. Gen. Stat. § 75-1.1 in some respect, but that plaintiff has suffered actual injury as a proximate result of defendants' conduct. *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 184, 268 S.E.2d 271, 273-74 (1980); N.C. Gen. Stat. § 75-16 (1994). Plaintiff alleged that he suffered injury in the form of public ridicule and humiliation, that his affairs and livelihood were placed in jeopardy, that he incurred attorney fees, and would experience increased difficulty in obtaining financing to preserve and maintain his golf course. Yet plaintiff was unable to identify more specifically any such ridicule or humiliation, or how his livelihood has been placed in jeopardy. Plaintiff stated in an affidavit, "[w]ith this claim of the Bank against me, it will not be possible for me to get the financing that I need to save the golf course." It appears from the record that plaintiff has merely speculated that he will be harmed by the actions of the defendants, and—other than his unsupported alle-

gations—has not forecast enough evidence to show the likelihood or extent of such injury.

Plaintiff argues that his attorney fees are actual damages caused by the conduct of defendants. Plaintiff has not incurred attorney fees in defending an unjust action brought by defendants, however, but in initiating this action himself. We have held previously that

G.S. 75-16.1 allows the trial court to assess a reasonable attorneys' fee against the losing party. The trial court may award attorneys' fees in its discretion upon a finding that:

(1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or

(2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

*Torrance v. AS & L Motors*, 119 N.C. App. 552, 556, 459 S.E.2d 67, 70, *disc. review denied*, 341 N.C. 424, 461 S.E.2d 768 (1995); N.C. Gen. Stat. § 75-16.1 (1994). Here, defendants have not committed acts which amount to an unfair trade practice. Further, defendants attempted to resolve promptly the dispute with plaintiff over the guaranty agreement by moving to amend its answer by striking its counterclaim against plaintiff. Although plaintiff's motion for partial summary judgment sought to have the guaranty agreement declared null and void, defendants had already withdrawn their counterclaim against plaintiff in which they sought to recover on the guaranty agreement.

In summary, plaintiff's forecast of evidence is insufficient as a matter of law to show that defendants' actions constitute an unfair trade practice, and is also insufficient to show that plaintiff has been actually damaged by the actions of defendants. The trial court did not err in denying plaintiff's motion for partial summary judgment on his unfair trade practice claim.

We also conclude, for the reasons set out above, that the trial court properly granted defendants' motion for summary judgment on all of plaintiff's claims against them. The actions of defendants do not support plaintiff's claims for compensatory, punitive, and treble damages. "Punitive damages may be awarded only where the wrong is

done willfully or under circumstances of rudeness, oppression or in a manner which evidences a reckless and wanton disregard of the plaintiff's rights." *Hardy v. Toler,* 288 N.C. 303, 306-07, 218 S.E.2d 342, 345 (1975). Treble damages are assessed automatically upon a violation of N.C. Gen. Stat. § 75-1.1. *Pinehurst, Inc. v. O'Leary Bros. Realty,* 79 N.C. App. 51, 61, 338 S.E.2d 918, 924, *disc. review denied,* 316 N.C. 378, 342 S.E.2d 896 (1986).

Here, there is no forecast of evidence of rudeness, oppression, or a reckless and wanton disregard of plaintiff's rights, which could support a demand for punitive damages. Nor, as we have seen, is there evidence which would raise a question of material fact on any of the other issues raised by plaintiff. The facts of this case are largely undisputed, and simply do not support a finding that defendants have violated N.C. Gen. Stat. § 75-1.1, nor that they have caused actual damage to the plaintiff. Plaintiff's assignments of error are overruled.

Affirmed.

Chief Judge EAGLES and Judge WALKER concur.