TONY D. GUPTON, Plaintiff v. SON-LAN DEVELOPMENT CO., INC., LANNY K. CLIFTON, JAMES W. JOHNSON, III, ROBERT P. WELLONS, and FRED L. STANCIL, Defendants

No. COA09-934

(Filed 6 July 2010)

**1. Appeal and Error— review of summary judgment—evidence not considered by trial court**

On appellate review of summary judgment, the appellate court cannot review evidence which was not considered by the trial court in its analysis. In this case, the trial court limited its consideration of a settlement agreement to the specific facts contained in its order and discussion of the settlement agreement in the defendant's brief that went beyond the scope of the limited purpose for which the evidence was considered by the trial court was stricken.

**2. Malicious Prosecution— prior lawsuit—probable cause**

The trial court did not err by granting defendants' motion for summary judgment on a claim for malicious prosecution in a dispute arising from a failed real estate transaction. A reasonable person would be induced to believe that plaintiff had repudiated his obligations by his actions; defendant's prior lawsuit was initiated upon sufficient probable cause.

**3. Contracts— tortious interference—underlying lawsuit— probable cause**

The trial court did not err by granting defendants' motion for summary judgment with respect to a claim for tortious interference with contract in a dispute arising from a failed real estate transaction. Defendants had probable cause to file the underlying lawsuit and were merely enforcing their rights under their contract.

**4. Wrongful Interference— interference with prospective advantages—underlying lawsuit—probable cause**

The trial court did not err by granting defendants' motion for summary judgment on plaintiff's claim for unlawful interference with prospective economic relationships and advantages. Defendants had probable cause to initiate the underlying lawsuit.

**5. Unfair and Deceptive Trade Practices— failed real estate transaction—lawsuit and lis pendens**

The trial court did not err by granting summary judgment for defendants on an unfair and deceptive practices action arising from a failed real estate action. Defendants had probable cause to bring the underlying lawsuit and were justified in issuing the notice of *lis pendens*, so that their actions were not unfair, and defendants' actions were not likely to mislead any future purchasers of the property as to proper ownership, so that defendants were not deceptive.

Appeal by plaintiff from order entered 5 March 2008 by Judge Robert H. Hobgood in Harnett County Superior Court. Heard in the Court of Appeals 22 February 2010.

*Akins/Hunt, P.C., by Donald G. Hunt, Jr. and Kristen G. Atkins, for plaintiff-appellant.*

*Bain, Buzzard & McRae, LLP, by Edgar R. Bain, Robert A. (Tony) Buzzard, and L. Stacy Weaver, III, for defendants-appellees.*

MARTIN, Chief Judge.

Plaintiff Tony D. Gupton ("Gupton") appeals from an order granting defendants' motion for summary judgment dismissing his claims for compensatory, special, and punitive damages. For the reasons which follow, we affirm the judgment of the trial court.

This action arises out of a series of contracts for the purchase and sale of a tract of land and business operated thereon, Hidden Valley Country Club, Inc. ("Hidden Valley"), located in southern Wake County. The facts shown by the record before the trial court, summarized only to the extent required for discussion of the issues before us, show that on 11 February 2004, Gupton entered into a contract ("11 February 2004 agreement") with John Bailey Wells ("Wells") to purchase "all land, equipment on hand as of December 31, 2003, inventory and property associated with Hidden Valley Country Club for the agreed price of $2,164,000." By a separate contract, Wells agreed to provide $252,000 in owner financing for the purchase, and Gupton agreed to pay Wells a bonus of $25,200 in the event "said property and business are sold in the future." At the time of these contracts, Gupton's intentions were to operate Hidden Valley as a golf course.

**GUPTON v. SON-LAN DEV. CO., INC.**

[205 N.C. App. 133 (2010)]

Gupton was unable to secure sufficient financing to complete the purchase. Through a business partner, Keith Johnson, Gupton approached defendant Lanny Clifton ("Clifton"), the owner of Son-Lan Development, Inc. ("Son-Lan"), about buying the property for development purposes. On 7 May 2004, Gupton entered into a contract with Son-Lan ("7 May 2004 agreement") in which Gupton agreed to sell Hidden Valley to Son-Lan for the sum of $2,350,000. The contract was conditioned upon Gupton's purchase of Hidden Valley from Wells pursuant to the 11 February 2004 agreement, and the closing was to "occur on or before June 7, 2004." Gupton further agreed to convey the land, inventory, and equipment to Son-Lan through a general warranty deed, free from encumbrances. Son-Lan agreed separately with James W. Johnson, III ("Johnson"), Fred L. Stancil ("Stancil"), and Robert P. Wellons ("Wellons") (collectively "defendants") for their participation in the purchase of the property from Gupton.

Gupton's closing of the purchase from Wells was set for 26 May 2004. Prior to that date, Wells indicated to Gupton that he would tender only a quitclaim deed, bill of sale, and title to the vehicles. Wells also sought assurances that Gupton would continue to operate Hidden Valley as a golf course and that his son and Lisa W. Earp would be employed there.

On 26 May 2004, defendants provided Gupton with the funds for the purchase price of Hidden Valley from Wells. Upon Wells' tender of a quitclaim deed, which Gupton refused to accept, the closing did not occur. Thereafter, in August 2004, Gupton and Wells sought, through mediation, to resolve the situation. Gupton notified Clifton in advance of the scheduled mediation session, but neither Clifton nor the other defendants were available to attend. During the mediation, Gupton contacted Johnson and informed him that he intended to agree to pay Wells an increased amount to purchase Hidden Valley; Johnson told Gupton that defendants would not purchase the property at a higher price than that to which Gupton had agreed in the 7 May 2004 agreement with Son-Lan. Notwithstanding, on 9 August 2004, Gupton entered into a written Settlement and Release Agreement ("9 August 2004 agreement") with Wells in which he agreed to purchase Hidden Valley for $2,725,000 on or before 9 February 2005, in return for a general warranty deed, free from any encumbrances. Gupton and Wells further agreed to a mutual release of any past or future claims, including any potential claim arising from the 11 February 2004 agreement.

GUPTON v. SON-LAN DEV. CO., INC.

[205 N.C. App. 133 (2010)]

On 30 September 2004, Son-Lan filed a complaint and Notice of *Lis Pendens* ("Son-Lan lawsuit") in the Superior Court of Harnett County against Gupton, Wells, and Hidden Valley seeking specific performance of the 7 May 2004 agreement, as well as claims for civil conspiracy, tortious interference with a contract, unfair and deceptive practices, and fraud. By an amended complaint, Son-Lan also asserted a claim for constructive fraud. Gupton, Wells, and Hidden Valley moved for a change of venue to Wake County, which was denied. *Son-Lan Dev. Co. v. Wells*, 174 N.C. App. 840, 622 S.E.2d 523 (2005) (unpublished). They appealed the denial of the motion and, on 6 December 2005, this Court reversed and ordered a change of venue to Wake County. *Id.*

During the course of the Son-Lan lawsuit, Gupton received offers from third parties to purchase Hidden Valley for prices in excess of that which he had agreed to pay Wells. According to Gupton, due to the pendency of the Son-Lan lawsuit, he was unable to close on his contract with Wells prior to the 9 February 2005 deadline, and therefore, he could not accept the offers.

The record contains a copy of a Settlement and Release Agreement ("January 2005 settlement agreement") which was apparently signed by all of the parties to the current litigation in January 2005, which purports to settle the Son-Lan lawsuit upon payment by Gupton and Wells of an amount totaling $150,000. On 28 August 2006, Hidden Valley issued its check to Son-Lan and its attorney in the amount of $135,000, and on the same day, Son-Lan voluntarily dismissed the Son-Lan lawsuit with prejudice.

On 15 June 2007, Gupton filed his complaint in this action alleging claims for malicious prosecution, wrongful and tortious interference with contract, unlawful interference with prospective economic relationships and advantages, unfair and deceptive trade practices, and civil conspiracy. Gupton sought monetary damages as well as a declaratory judgment that "defendants acted as business partners as that term is defined by North Carolina Uniform Partnership Act and that defendants' liability to plaintiff is, therefore, joint and several." In support of his claims, Gupton alleged that defendants took "affirmative acts to commence a frivolous and unwarranted civil action against plaintiff." Defendants filed an answer denying the material allegations of the complaint and asserting a counterclaim which was subsequently voluntarily dismissed.

Defendants moved for summary judgment, and Gupton filed a motion seeking partial summary judgment with respect to his claim

for a declaratory judgment. A number of motions were filed by the parties relating to discovery issues, and Gupton filed two motions *in limine* seeking to exclude opinions rendered by defendants' expert witnesses and "any evidence related to compromises, settlements, offers to any compromise and offers to settle that may have been made" in the Son-Lan lawsuit.

By order entered 5 March 2008, the trial court granted Gupton's motion for partial summary judgment with respect to the declaratory judgment, holding there was no genuine issue with respect to the fact that defendants "acted as business partners in matters pertaining to" Gupton. The trial court denied Gupton's first motion to compel discovery and motion for sanctions. The trial court allowed Gupton's first motion *in limine* "to Exclude Probable Cause Experts . . . but only as to [the experts'] testimony about 'probable cause.' " The trial court ruled the remainder of the expert "testimony [wa]s admissible for purposes of the [d]efendants' Summary Judgment Motion." Evidence of the January 2005 settlement agreement was excluded, "except that for the limited purpose of the [d]efendant's Summary Judgment Motion evidence [wa]s admissible that Hidden Valley Country Club, Inc. on 28 August 2006 issued its check number 12720 in the amount of $135,000 payable to the order of Son-Lan Development Co. Inc. and Edgar Bain, and that on the same date, 28 August 2006, Edgar Bain, attorney for Son-Lan Development Co., Inc. signed and filed a Notice of Voluntary Dismissal with Prejudice in" the Son-Lan lawsuit. The additional motions of the parties for Rule 37 sanctions were denied. Finally, the trial court granted defendants' motion for summary judgment with respect to each of Gupton's substantive claims. Gupton appeals.

[1] Our standard of review of an order granting summary judgment is *de novo. Dillingham v. Dillingham,* —— N.C. App. ——, ——, 688 S.E.2d 499, 503 (2010). "A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Id.* at ——, 688 S.E.2d at 503-04 (internal quotation marks omitted).

> [A]n issue is material if the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail. A question of fact which is immaterial does not preclude summary judgment.

*Kessing v. Nat'l Mtge. Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971). Moreover, in reviewing a grant of summary judgment, "the evidence presented by the parties must be viewed in the light most favorable to the non-movant." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). The appellate court, however, cannot review evidence which was not considered by the trial court in its analysis. *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991) ("This Court will not consider arguments based upon matters not presented to or adjudicated by the trial tribunal."). In this case, for reasons which are unclear in the record, the trial court limited its consideration of the January 2005 settlement agreement to the specific facts contained in its order, and defendants have not cross-assigned error to its ruling in that respect. Accordingly, we decline to consider the agreement for any other purpose, and any discussion of that evidence in defendants' brief which goes beyond the scope of the limited purpose for which it was considered by the trial court is stricken. *See* N.C.R. App. P. 34(a)(3).

[2] Gupton first argues that the trial court erred in granting defendants' motion for summary judgment with respect to his claim of malicious prosecution. In order to prove a claim for malicious prosecution, a plaintiff must show "(1) defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; *and* (4) termination of the earlier proceeding in favor of the plaintiff." *Best v. Duke Univ.*, 337 N.C. 742, 749, 448 S.E.2d 506, 510, *reh'g denied*, 338 N.C. 525, 452 S.E.2d 807 (1994) (emphasis added). "Additionally, in malicious prosecution cases based on underlying civil actions, the plaintiff must prove special damages." *Raymond U v. Duke Univ.*, 91 N.C. App. 171, 177, 371 S.E.2d 701, 706, *disc. review denied*, 323 N.C. 629, 374 S.E.2d 590 (1988). Probable cause, as it applies to claims of malicious prosecution, "has been properly defined as the existence of such facts and circumstances, known to [the defendant] at the time, as would induce a reasonable man to commence a prosecution." *Best*, 337 N.C. at 750, 448 S.E.2d at 510 (internal quotation marks omitted) (alteration in original). It is not essential that the person bringing the action "knows the facts necessary to insure a conviction, but that there are known to him sufficient grounds to suspect that the person he charges was guilty of the offense." *Petrou v. Hale*, 43 N.C. App. 655, 657, 260 S.E.2d 130, 133 (1979) (internal quotation marks omitted), *disc. review denied*, 299 N.C. 332, 265 S.E.2d 397 (1980). Moreover, "[w]hether probable cause exists is a mixed question of law and fact, but where the facts are admitted or established, the

**GUPTON v. SON-LAN DEV. CO., INC.**

[205 N.C. App. 133 (2010)]

existence of probable cause is a question of law for the court." *Best,* 337 N.C. at 750, 448 S.E.2d at 510.

We find the circumstances in the present case "would induce a reasonable man" to conclude that Gupton had, by his actions, repudiated his obligations under the 7 May 2004 agreement and justify defendants' bringing the prior action for its breach.[1] *Id.* (internal quotation marks omitted). A valid contract existed between Gupton and Son-Lan for Son-Lan to purchase Hidden Valley, conditioned on Gupton's purchase of Hidden Valley under the original 11 February 2004 agreement with Wells. Though the agreement between Gupton and Son-Lan set a closing date for 7 June 2004, it did not indicate that time was of the essence. Thus, the parties had a reasonable time from the specified closing date in which to perform under the contract. *Phoenix Ltd. P'ship of Raleigh v. Simpson,* —— N.C. App. ——, ——, 688 S.E.2d 717, 719 (2009) ("Generally, in the absence of a 'time is of the essence' provision, the parties must perform within a reasonable amount of time of the date set for closing."). Accordingly, when Gupton entered into the 9 August 2004 agreement with Wells, the 7 May 2004 agreement between Gupton and Son-Lan was still valid. *Wolfe v. Villines,* 169 N.C. App. 483, 489, 610 S.E.2d 754, 759 (2005) (finding a delay of only a few weeks from the set closing date was not unreasonable and did not invalidate the contract to purchase the property). Therefore, any actions by Gupton on 9 August 2004 and beyond that demonstrated his intention not to perform his duties under the 7 May 2004 agreement could be considered an anticipatory repudiation. *Allen v. Weyerhaeuser, Inc.,* 95 N.C. App. 205, 209, 381 S.E.2d 824, 827 (1989).

It is well settled that "[w]hen the promisor to an executory agreement for the performance of an act in the future renounces its duty under the agreement and declares its intention not to perform it, the promisee may treat the renunciation as a breach and sue at once for damages." *Id.* (internal quotation marks omitted). "In order to main-

---

1. Defendants did not specifically plead anticipatory repudiation in their complaint in the Son-Lan lawsuit, but instead claimed that Gupton breached his contract. This, however, is not fatal to defendants' previous claim nor their position in the present appeal, especially where the complaint alleged facts sufficient to support a claim for anticipatory repudiation. *See Strickland v. Town of Aberdeen,* 124 N.C. App. 430, 433, 477 S.E.2d 218, 220 (noting that "allegations of a mislabeled claim must still reveal that plaintiff has properly stated a claim under some legal theory"); *see also Taylor v. Taylor Prods. Inc.,* 105 N.C. App. 620, 626, 414 S.E.2d 568, 573 (1992) (stating that "an anticipatory repudiation will give rise to an action for total breach of the contract"), *overruled on other grounds by Brooks v. Giesey,* 334 N.C. 303, 318, 432 S.E.2d 339, 347 (1993).

tain [such] a claim for anticipatory [repudiation], the words or conduct evidencing the renunciation or breach must be a positive, distinct, unequivocal, and absolute refusal to perform the contract when the time fixed for it in the contract arrives." *Id.* (internal quotation marks omitted). If this occurs, there "is a breach of the contract . . . even though it takes place long before the time prescribed for the promised performance and *before conditions specified in the promise have ever occurred.*" 9 Arthur L. Corbin, *Corbin on Contracts* § 959 (1951, interim ed. renewed 1979) (emphasis added). Moreover, when a party, whose obligation it is to fulfill a condition precedent contained in a contract, clearly repudiates his obligation to act in good faith and ensure that reasonable efforts are taken to fulfill the condition, the other party acquires rights under the contract and may sue to enforce those rights. *Accord Carson v. Grassmann*, 182 N.C. App. 521, 525, 642 S.E.2d 537, 540 (finding that "[b]ecause plaintiffs have not acted in bad faith in failing to meet the condition precedent, defendants have no rights under the contract"), *disc. review denied*, 361 N.C. 426, 648 S.E.2d 207 (2007); *see Weyerhaeuser Co. v. Godwin Bldg. Supply Co.*, 40 N.C. App. 743, 746, 253 S.E.2d 625, 628 (1979) (stating that when a "buyer's obligation [is] condition[ed] upon obtaining financing," the buyer "implied[ly] promise[s] that [he] . . . will act in good faith and make reasonable efforts to secure the financing.").

In the present case, the 7 May 2004 agreement between Gupton and Son-Lan was clearly conditioned on Gupton's purchase of Hidden Valley from Wells pursuant to their 11 February 2004 agreement. *See Carson*, 182 N.C. App. at 524, 642 S.E.2d at 539 ("A condition precedent is an event which must occur before a contractual right arises, such as the right to immediate performance." (internal quotation marks omitted)). However, while the contract between Gupton and Son-Lan was still valid, Gupton entered into a new contract with Wells where he agreed to purchase Hidden Valley for $2,725,000, $375,000 more than the purchase price stated in the 7 May 2004 agreement. After this new contract was formed, Gupton began actively searching for new purchasers for Hidden Valley. Based on these actions, a reasonable person would believe that Gupton did not intend to meet his obligation to act in good faith and make reasonable efforts to ensure that the 11 February 2004 agreement with Wells was enforced. Even though Gupton did attempt to close on his original contract with Wells on 26 May 2004, a reasonable person could conclude that Gupton's actions subsequent to the failed closing indicated his repudiation of his obligations under the 7 May 2004 agreement

with Son-Lan. *See Weyerhaeuser Co.*, 40 N.C. App. at 747, 253 S.E.2d at 628 (finding that even though there was some evidence that the defendant made a good faith effort in meeting the condition to assist the plaintiffs in obtaining financing, a jury could conclude that defendants in fact did not assist plaintiffs based on the other evidence presented). Moreover, Gupton's actions clearly indicate his intention to repudiate his obligation to sell Hidden Valley to defendants for the agreed $2,350,000, even if he was able to purchase Hidden Valley from Wells. Thus, based on this evidence a reasonable person could view these actions as an effort by Gupton to prevent defendants from "receiv[ing] the benefits of the agreement," and, thus, an anticipatory repudiation. *Sunset Beach Dev. v. AMEC, Inc.*, —— N.C. App. ——, ——, 675 S.E.2d 46, 57 (2009). Accordingly, before initiating the Son-Lan lawsuit, defendants had sufficient facts before them to indicate that Gupton was repudiating his obligations under the 7 May 2004 agreement by not only engaging in conduct which clearly indicated his intent not to honor the original purchase price but by also failing to make reasonable efforts to enforce his original contract with Wells. Under these circumstances, we find that "a reasonable man [would be induced] to commence a prosecution" for anticipatory repudiation and breach of contract. *Best*, 337 N.C. at 750, 448 S.E.2d at 510.

In addition, we hold defendants had probable cause to file their claim for specific performance and to file the Notice of *Lis Pendens*. *See Rainbow Props. v. Wilkinson*, 147 N.C. App. 520, 523, 556 S.E.2d 11, 14 (2001) ("[S]pecific performance is a proper remedy for enforcement of an option to purchase real estate."); *see also George v. Admin. Office of the Courts*, 142 N.C. App. 479, 482, 542 S.E.2d 699, 702 (2001) (noting that "[a]ctions affecting title to real property" are proper actions for which to file a notice of *lis pendens* (internal quotation marks omitted)). Defendants' prior lawsuit was, therefore, initiated upon sufficient probable cause and, as such, Gupton's claim for malicious prosecution cannot survive. *Koury v. John Meyer of Norwich*, 44 N.C. App. 392, 398, 400, 261 S.E.2d 217, 221-23 (finding defendants were not liable for malicious prosecution when the undisputed facts revealed that they had probable cause to seek the plaintiff's arrest), *disc. review denied*, 299 N.C. 736, 267 S.E.2d 662 (1980).

In the context of his argument surrounding defendants' probable cause to initiate the Son-Lan lawsuit, Gupton also suggests that the trial court erred in admitting the testimony of three of defendants' expert witnesses as well as admitting evidence of Hidden Valley's pay-

ment to defendants and their voluntary dismissal of the Son-Lan law-suit. A discussion of these evidentiary rulings is not necessary because, as we have already explained, defendants were entitled to summary judgment with respect to Gupton's malicious prosecution claim even without considering the challenged evidence. We have also considered Gupton's various other arguments surrounding his claim for malicious prosecution and have concluded that they are without merit and may be disposed of without discussion. The trial court did not err in granting defendants' motion for summary judgment on this claim.

**[3]** Gupton next argues that the trial court erred in granting defend-ants' summary judgment motion on his claim of wrongful and tortious interference with contract.

> To establish a claim for tortious interference with contract, a plaintiff must show: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justifica-tion; (5) resulting in actual damage to plaintiff.

*Sellers v. Morton*, 191 N.C. App. 75, 81, 661 S.E.2d 915, 921 (2008) (internal quotation marks omitted). "[I]nterference with contract is justified if it is motivated by a legitimate business purpose." *Id.* at 82, 661 S.E.2d at 921 (internal quotation marks omitted). In the present case, Gupton argues that defendants interfered with his contract with Wells by filing the Son-Lan lawsuit and accompanying Notice of *Lis Pendens*. However, as we have already established, defendants had probable cause to file the Son-Lan lawsuit based on the actions by Gupton in repudiating his obligations under the 7 May 2004 agree-ment. Thus, defendants were merely enforcing their rights under their contract with Gupton, making their actions "motivated by a legiti-mate business purposes." *Id.* (internal quotation marks omitted). The trial court did not err in granting defendants summary judgment on this claim.

**[4]** Gupton also contends that the trial court erred in granting sum-mary judgment on his claim of unlawful interference with prospective economic relationships and advantages in defendants' favor. "[T]o state a claim for wrongful interference with prospective advantage, the plaintiffs must allege facts to show that the defendants acted without justification in inducing a third party to refrain from entering

into a contract with them which contract would have ensued but for the interference." *Walker v. Sloan*, 137 N.C. App. 387, 393, 529 S.E.2d 236, 242 (2000) (internal quotation marks omitted). Further,

> the general rule prevails that unlawful interference with the freedom of contract is actionable, whether it consists in maliciously procuring breach of a contract, or in preventing the making of a contract when this is done, not in the legitimate exercise of the defendant's own rights, but with design to injure the plaintiff, or gaining some advantage at his expense.

*Coleman v. Whisnant*, 225 N.C. 494, 506, 35 S.E.2d 647, 656 (1945). Thus, Gupton's claim for unlawful interference with prospective advantage fails for the same reason that his claim for wrongful and tortious interference with contract fails. Defendants had probable cause to initiate the Son-Lan lawsuit and, thus, were only exercising their rights under the 7 May 2004 agreement. The trial court, therefore, did not err in granting defendants' motion for summary judgment with respect to this claim.

[5] Gupton finally argues that the trial court erred in granting defendants' summary judgment motion dismissing his claim for unfair and deceptive trade practices. "To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *Carcano v. JBSS, LLC*, —— N.C. App. ——, ——, 684 S.E.2d 41, 49 (2009) (internal quotation marks omitted). "Whether an act or practice is unfair or deceptive under this section is a question of law for the court." *Id.* at ——, 684 S.E.2d at 50. Additionally, "it is not necessary that an act or practice be *both* unfair *and* deceptive in order to be violative of the statute." *Rucker v. Huffman*, 99 N.C. App. 137, 142, 392 S.E.2d 419, 421 (1990).

"A practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Branch Banking & Tr. Co.*, 133 N.C. App. 580, 583, 515 S.E.2d 727, 729 (1999) (internal quotation marks omitted). "Stated another way, a party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." *Carcano*, —— N.C. App. at ——, 684 S.E.2d at 50. "[A] practice is deceptive if it has the capacity or tendency to deceive." *Huff v. Autos Unlimited, Inc.*, 124 N.C. App. 410, 413, 477 S.E.2d 86, 88 (1996) (internal quotation marks omitted) (alteration in original), *writ of supersedeas, motion for*

IN RE A.J.M.P.

[205 N.C. App. 144 (2010)]

*temp. stay, and cert. denied,* 346 N.C. 279, 487 S.E.2d 546 (1997). As defendants had probable cause to bring the Son-Lan lawsuit and were justified in issuing the Notice of *Lis Pendens,* their actions were not unfair. Additionally, defendants' actions were not likely to mislead any future purchasers of Hidden Valley as to the proper ownership and, thus, were not deceptive. As defendants' actions were neither unfair or deceptive, Gupton's claim for unfair and deceptive trade practices also fails, and we find the trial court did not err.

Gupton's remaining assignments of error relating to the trial court's ruling on various motions relating to discovery have not been brought forward in his brief and are, therefore, deemed to have been abandoned. N.C.R. App. P. 28(b)(6). The order of the trial court is affirmed.

Affirmed.

Judges WYNN and STEPHENS concur.